UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

FORREST LODEN PENDERGRAPH, JR., )
)
   Plaintiff, )
)
v. )
) Case No.: 1:15-cv-298-CHS
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security )
Administration, )
)
   Defendant. )

# MEMORANDUM

I.     Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Forrest Pendergraph, Jr.'s ("Plaintiff") claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided by the Social Security Act.

The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 14]. Pending before the Court are Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 17].

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision. Accordingly, the Court **DENIES** Plaintiff's Motion [Doc. 15] and **GRANTS** Defendant's Motion [Doc. 17].

1

II. Background

   A. Procedural History

On September 23, 2011, Plaintiff protectively filed for DIB and SSI under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, based on severe back trauma, arthritis, and nerve damage to the back[1] [Tr. 110-122, 136].[2] Plaintiff's claim was denied initially and on reconsideration [Tr. 49-52, 53-57, 60-65]. On June 11, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Jeannie Bartlett [Tr. 29-48]. On August 28, 2014, the ALJ issued a decision finding that Plaintiff was "not disabled," as defined in the applicable sections of the Act, because work existed in the national economy that he could still perform [Tr. 10-18]. On September 1, 2015, the Appeals Council denied Plaintiff's request for review [Tr. 1-3]. Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g).

   B. Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently a fifty-year-old individual who performed past relevant work as a cook, hanging parts worker, and painter [Tr. 43-44, 137]. At the time of his alleged onset date of June 10, 2010, Plaintiff was forty-four years old [Tr. 112, 116, 142].

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15].

[2] An electronic copy of the administrative record is docketed at Doc. 8.

*Plaintiff's Testimony and Medical History*

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since June 10, 2010, the alleged onset date (20 CFR 404.1571, *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, hearing loss, and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to lifting and carrying up to 20 pounds occasionally, up to 10 pounds frequently; could sit, stand, and walk for 6 hours in an 8-hour workday; would be limited to occasional pushing and pulling with the left upper extremity, but would be precluded from overhead reaching with the non-dominant left upper extremity; would be limited to climbing ropes and ramps, stooping, crouching, and crawling occasionally; would be precluded from climbing ladders and scaffolds, and would need a quiet environment where auditory acuity was not required.

6. The claimant is unable to perform any past work (20 CFR 404.1565 and 416.965).

3

7. The claimant was born on April 29, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 10-17].

III. Analysis

A. Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful

4

activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he is disabled; (4) if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering his age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts.

*Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B. Discussion

Plaintiff presents three issues for review: (1) whether the ALJ erred by failing to give proper weight to the opinion of Plaintiff's treating physician; (2) whether the ALJ erred by giving more weight to the opinions of non-treating and non-examining physicians over the opinion of Plaintiff's treating physician; and (3) whether the ALJ properly evaluated the credibility of Plaintiff's statements [Doc. 16 at 1].

1. Treating Source

Plaintiff argues that the ALJ "failed to properly evaluate" the opinion of his treating physician, Dr. Keith Weaver, and failed to "provide sufficient rationale for rejecting this opinion" [*Id.* at 7].

6

Under 20 C.F.R. §§ 404.1502 and 416.902,[3] a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to give the opinion upon consideration of the following factors: "the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). A failure to give "good

---

[3] The Social Security Administration revised its rules regarding the evaluation of medical evidence. 82 Fed. Reg. 5844-01, 2017 WL 168819. The revised regulations went into effect on March 27, 2017, *id.*, and are not applicable to this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). The treating-source rule is not, however, "a procrustean bed, requiring an arbitrary conformity at all times." *Friend*, 375 F. App'x at 551. The ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

In this case, the ALJ discussed Plaintiff's treatment history with Dr. Weaver in significant detail:

> On August 2, 2013, the claimant was evaluated by Charles Jones, P.T., with Rehab South. Dr. Weaver stated that it was his opinion that the claimant required skilled physical therapy in conjunction with a home exercise program and that the claimant's overall rehabilitation potential was good.[4] At the same time, the claimant established care with Keith Weaver, D.O., who stated that he agreed with the therapist's opinion. On August 10, 2011, the claimant reported he had not had his medications for diabetes mellitus or hypertension in several months due to not having a primary care physician and needed to start back on them. He later stated Dr. Han also dismissed him from practice because of a failed drug screen. Examination showed thoracic paraspinals tenderness with spasm bilaterally; lumbar paraspinals tenderness and with spasm bilaterally and tenderness to palpitation over the bilateral SI joint. Active range of motion was decreased in forward flexion. Straight leg raise was negative bilaterally. His height was 71 inches and his weight was 235 pounds. The claimant's diabetes mellitus and hypertension medications were restarted. On July 29, 2013, the claimant reported left shoulder pain in addition to his already reported symptoms. Dr. Weaver documented the claimant was unable to lift his left arm to shoulder height in any plane as well as reported mild pain with range of motion testing . . . .

---

[4] It appears from the medical record that Physical Therapist Charles Jones prepared a Plan of Care following Plaintiff's August 2, 2013 visit to Rehab South and that Plaintiff's treating physician, Dr. Weaver, concurred with the Plan of Care on August 5, 2013 [Tr. 300].

8

> . . .
>
> On August 26, 2013, the claimant stated that he was overdue for his next diabetes mellitus prescription and would like shoes for his diabetes mellitus. He reported his blood sugars had been better controlled since his prior visit. Examination remained unchanged. Dr. Weaver documented the x-ray of the claimant's left shoulder showed mild osteoarthritis. On September 23, 2013, the claimant reported that while his low back pain was unchanged, he did get some relief from his medications and was able to do some things around the house; Robaxin helped with the spasms and gave him some relief as well; his blood pressure was well controlled with his medication; and Mobic helped his osteoarthritis some, but that he would like to try [a] higher dose. On October 7, 2013, Dr. Weaver documented the claimant's A1c was high at 13. The claimant admitted he did not eat a diabetes mellitus diet at all and drank soda and other sugary drinks frequently as well as ate large amounts of potatoes, bread, and pastas. Dr. Weaver stated that he advised the claimant that he needed to change his lifestyle before any medications would be able to handle his diabetes mellitus, adding that the claimant was on a very self-destructive path with his eating habits. On October 21, 2013, the claimant reported his low back pain had been better with the increased Mobic and Ibudone. In November 2013, the claimant continued to report his Ibudone was working well for his low back and shoulder pain. The claimant also stated that he had eaten several pieces of pie the previous evening and his blood sugars were high when drawn. In December 2013, the claimant rated his pain as a 3-4 on a 10-point scale with his medications. His diet noncompliance continued. Throughout 2014 Dr. Weaver continue to advise the claimant to work on diet, exercise, and weight loss. . . . On April 23, 2014, the claimant reported he had experienced increased swelling in his right leg and had to wear compression stockings. Examination showed +2 pitting edema in right lower extremity, +1 pitting edema in the left lower extremity, +2 pulses bilaterally. Swelling of the lower extremity was added to the claimant's diagnoses . . . .

[Tr. 13].

On February 5, 2014, Dr. Weaver completed a Medical Source Statement regarding Plaintiff's physical functional limitations [Tr. 344-345]. Dr. Weaver opined that, in an eight-hour workday, Plaintiff could sit for eight hours; stand for thirty to sixty minutes at a time and for two hours total; walk for sixty minutes at a time and for three to four hours total; and occasionally lift or carry up to five pounds with the right hand only [Tr. 344]. Dr. Weaver further opined that

9

Plaintiff could never bend and could only occasionally use his right hand to push and pull and for gross and fine manipulation [*Id.*]. In Dr. Weaver's opinion, Plaintiff would be unreliable in attending a full-time work schedule; would need to rest two to four times daily for thirty to sixty minutes at a time; would not be able to climb ladders; would lose concentration or focus two to four times daily for thirty to sixty minutes each time; and would experience moderately severe pain. [Tr. 344-345].

The ALJ assigned Dr. Weaver's opinion little weight, explaining that she found the opinion "overly broad and unsupported by the claimant's treatment notes, physical examination findings, and objective imaging." [Tr. 14].

Without specifying how, Plaintiff argues that the ALJ mischaracterized Dr. Weaver's opinion [Doc. 16 at 8]. In another broad claim of error, Plaintiff asserts that "the ALJ failed to properly address certain aspects of [Dr. Weaver's] opinion in her decision and failed to resolve these significant inconsistencies." [*Id.*]. By failing to specify which aspects of Dr. Weaver's opinion were improperly addressed, what the inconsistencies are, and why they are legally significant, Plaintiff has waived this issue. *See, e.g.*, *Kennedy*, 87 F. App'x at 466 ("issues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Warner v. Comm'r of Soc. Sec.*, No. 4:13-cv-46, 2014 WL 3866160, at *7 (E.D. Tenn. Aug. 5, 2014) (finding waiver of issue because of plaintiff's failure to "provide any legal grounds, argument, or citation to any authority, case, or rule in support of [a] claim of error"); *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009); E.D. Tenn. L.R. 7.1(b).

Nevertheless, the Court has considered the treating source issue and, after reviewing the

10

record, the Court concludes that the ALJ properly assessed Dr. Weaver's medical opinion. The ALJ appropriately considered Dr. Weaver to be a treating source, but determined that his opinion was inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. The ALJ went on to analyze the statutory factors in deciding the appropriate weight to give Dr. Weaver's opinion. In particular, the ALJ noted that Dr. Weaver's treatment notes frequently indicated that Plaintiff was noncompliant with medications and with treatment advice about maintaining a diabetic diet and exercising [Tr. 13, 196, 278, 280, 283, 288]. The ALJ concluded that these reports were cause to discount Dr. Weaver's opinion that Plaintiff was completely disabled. The ALJ also observed that, on several occasions, Plaintiff reported that his pain was controlled with prescribed medications [Tr. 13, 16, 283, 288, 359]. Finally, the ALJ noted that Dr. Weaver's opinion was undermined by objective medical evidence showing only mild findings [Tr. 13-14, 192, 211-212, 314-315, 324, 368].

When a treating physician's opinion is not entitled to controlling weight, the ALJ must, nonetheless, weigh the opinion pursuant to the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c), to determine what weight the opinion should be afforded. Here, it is apparent that the ALJ examined factors including the supportability of the opinion and the degree to which the opinion was consistent with the record as a whole. The Court finds that the ALJ properly weighed the applicable statutory factors when determining that Dr. Weaver's opinion was entitled to little weight. In addition, the Court finds that the ALJ explained the basis for affording little weight to the treating physician's opinion and gave good reasons for the decision. Accordingly, the Court concludes that the ALJ did not err in her consideration of Dr. Weaver's opinion.

11

### 2. *Medical Opinion Evidence from Nontreating Sources*

Next, Plaintiff argues that the ALJ erred by relying on the opinions of consultative physicians Dr. Lynda Klee, Au.D., and Dr. Marcus Whitman [Doc. 16 at 9]. Dr. Klee, an audiologist, tested Plaintiff's hearing and provided an opinion on his hearing ability [Tr. 220-222]. As the Commissioner correctly notes, neither Dr. Weaver nor any other physician of record discussed Plaintiff's hearing ability. The ALJ afforded Dr. Klee's opinion "significant weight" because she found it to be "consistent with the record as a whole" [Tr. 15]. The consistencies include notes from ear, nose, and throat specialist, Dr. Motto, who stated that Plaintiff's conductive hearing loss "is very typical of people who have had a cleft palate," and Plaintiff's report to Dr. Motto that he formerly worked in a noisy environment [Tr. 216, 218]. The ALJ included a limitation in Plaintiff's Residual Functional Capacity ("RFC") that he "would need a quiet environment where auditory acuity was not required" [Tr. 11].

Dr. Whitman, a state agency consultant, reviewed Plaintiff's case and opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently; could sit for a total of six hours in an eight-hour workday; could stand and/or walk for a total of six hours in an eight-hour workday; could push and pull in an unlimited capacity; could perform all postural maneuvers occasionally, except for climbing ladders, ropes, or scaffolds, which he could never do; should avoid concentrated exposure to extreme cold, wetness, and humidity; and should avoid all exposure to hazards such as machinery and heights [Tr. 248-251]. The ALJ afforded "great weight" to Dr. Whitman's opinion because she found it to be "consistent with [Plaintiff's] physical examination findings and objective imaging" [Tr. 15].

12

An ALJ is "not bound" by the findings of a state agency physician, but is required to consider his/her opinion. 20 C.F.R. §§ 404.1527(e); 416.927(e); Soc. Sec. Rul. 96-6p. The Regulations explain that "[s]tate agency medical and psychological consultants and other program physicians . . . are highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). Having decided that the treating physician's opinion was not entitled to controlling weight, the ALJ was permitted to rely on the consultative sources' opinions in formulating Plaintiff's RFC. *See, e.g.*, *Vantrease v. Colvin*, No. 3:14-cv-1321, 2015 WL 2367185, at *11 (M.D. Tenn. May 18, 2015). After reviewing the record, the Court concludes that substantial evidence supports the ALJ's assessment of Dr. Klee's and Dr. Whitman's opinions.

*3. Credibility Assessment*

Plaintiff next argues that the ALJ's assessment of his subjective complaints of pain and other symptoms "was not sufficient to satisfy SSR 96-7p" [Doc. 16 at 11].[5]

A claimant's statement that he is experiencing disabling pain or other subjective symptoms will not, taken alone, establish that he is disabled. 20 C.F.R. §§ 404.1529(a); 416.929(a). Evaluating subjective complaints requires a two-step analysis known in this circuit as the *Duncan* test. *See Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Under the *Duncan* test,

> [f]irst, we examine whether there is objective medical evidence of an underlying medical condition. [Second], [i]f there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the

---

[5] SSR 96-7p has been superseded by SSR 16-3p which eliminates the use of the term "credibility" from SSA policy, because the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p became effective on March 28, 2016 (*see* 2016 WL 1237954), so it is not applicable to the ALJ's decision in this case.

13

> condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853). Objective medical evidence constitutes medical signs and/or laboratory findings as defined in 20 C.F.R. §§ 404.1528(b)-(c) and 416.928(b)-(c). However, the *Duncan* test "does not require objective evidence of the pain itself." *Felisky*, 35 F.3d at 1039 (internal citation omitted). The Commissioner may examine a number of other factors besides medical signs and laboratory findings to determine the severity of the alleged pain or other subjective symptoms once the underlying impairment is established by objective medical evidence. As the Social Security regulations explain,

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work....

20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also Felisky*, 35 F.3d at 1037-40.

In addition to the objective medical evidence, the claimant's own statements regarding the persistence, intensity, and limiting effects of his symptoms will be considered; however, in considering those statements, the claimant's credibility will be evaluated. *See id.* at 1036-37. It is the province of the Commissioner, not the reviewing court, to make credibility findings, but the Commissioner must clearly state her reasons if she finds the claimant to be lacking in credibility. *Id.* at 1036; *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant"). The ALJ's credibility findings "are entitled to deference, because of the ALJ's unique opportunity to observe

14

the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

The SSA provides a checklist of other factors that the ALJ must consider to assess the severity of a claimant's subjective complaints, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; medication taken to alleviate pain or other symptoms; treatment other than medication received for relief of pain or other symptoms; and any other measures used to relieve the pain or other symptoms (such as lying down or standing for 15 to 20 minutes every hour). 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *see also Felisky*, 35 F.3d at 1037-38 (discussing 20 C.F.R. § 404.1529 pertaining to the evaluation of subjective complaints of symptoms such as pain).

Additionally, Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record and not be based upon the ALJ's "intangible or intuitive notion[s]." 1996 WL 374186 at *4. In assessing the claimant's credibility, the ALJ must consider the record as a whole, including the claimant's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id*. at *5. Consistency between the claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). The ALJ must explain the credibility determination such that both the claimant and subsequent reviewers will know the weight given to the claimant's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ satisfied the first prong of the *Duncan* test when she concluded that

15

Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms [Tr. 15]. The second prong of the *Duncan* test consists of two alternatives: whether the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or whether the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

After discussing Plaintiff's testimony and the medical evidence of record, the ALJ found that:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[Tr. 15]. Plaintiff's argument that the credibility finding above is a "conclusory statement" [Doc. 16 at 11] ignores the explanations that the ALJ made elsewhere in the decision. The Court's review of the record and of the ALJ's decision indicates that the ALJ clearly explained the reasons for finding Plaintiff's allegations of disabling symptoms and limitations from his impairments to be not fully credible. The ALJ relied upon Plaintiff's medical records and testimony in making the credibility assessment and articulated several reasons supporting her decision, including the following:

> The claimant testified he experienced constant pain in his back and both legs as well as swelling in his feet and shoulder pain. He stated he was unable to work as a result and that he had to lay down or recline every 30-60 minutes. He attributes his pain to a work injury in 2010. The claimant reported he lived with his wife and 2 kids, ages 18 and 13. He stated that his wife was disabled and received benefits but that he was unsure as to why. The claimant testified his wife took care of the household and that he spent time with his kids playing board games with them.
>
> However, the claimant's reported extent of his limitations are inconsistent with the medical evidence of record. To that end, while the claimant alleges disability as a

16

> result of a 2010 work injury, he did not report his injury at the time it occurred, did
> not seek treatment with a medical doctor for it until August 2011, and worker's
> compensation denied it as work related. Objective imaging showed only some
> degenerative disc disease. Additionally, the claimant misused his narcotic
> medications prescribed by Dr. Han and was dismissed from that practice
> whereupon he returned to his primary care physician almost 2 years later and started
> getting his pain medications from him. While an x-ray showed mild degenerative
> changes, the claimant reported his pain medications were controlling his pain
> overall. Last, while the claimant alleges disability because his diabetes is
> uncontrolled, clinical records repeatedly document the claimant was not compliant
> with his medications or with a diabetic diet. Additionally, the claimant does not
> require insulin treatment. *SSR 96–7p* provides that an individual's statements may
> be considered less credible if the level of frequency of treatment is inconsistent with
> the levels of complaints or if the medical reports of records show that the individual
> is not following prescribed treatment and there are no good reasons for this failure.
> Based on the foregoing and the record as a whole, I find the claimant credible only
> to the extent his testimony is consistent with my residual function[al] capacity
> assessment.

[Tr. 15-16].

As detailed above, the ALJ set forth a specific analysis evaluating several of the appropriate regulatory factors and concluding that Plaintiff's subjective complaints of symptoms were not fully credible. For instance, the ALJ discussed Plaintiff's treatment history, noting that Plaintiff began complaining about severe lower back pain after a 2010 fall at work [Tr. 34], but that he did not seek treatment with a medical doctor until the summer of 2011 [Tr. 16, 315-316]. Additionally, the ALJ discussed Plaintiff's success alleviating his symptoms with medication, but also his noncompliance with prescribed treatment, including medication and diet [Tr. 16]; Plaintiff's daily activities [Tr. 15-16]; Plaintiff's conservative treatment and modest examination findings [Tr. 16, 324]; and "other relevant evidence in the case record" such as Plaintiff's misuse of prescribed narcotic medications and dismissal from Dr. Han's medical practice [*Id.*]. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

17

The Court concludes that the ALJ properly weighed the evidence in the record and did not err in assessing the credibility of Plaintiff's statements. The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7p.

IV. Conclusion

Having carefully reviewed the entire administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, it is hereby **ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15] is **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 17] is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. This action is hereby **DISMISSED** and the Court directs the Clerk to **CLOSE** the case. A separate judgment will enter.

s\ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE